Good morning, Your Honor. On behalf of Appellant Corona, David Elden is with me. I would like, if possible, to save three minutes for rebuttal, although I understand sometimes things are not always the way we want it to be. This is an interesting case. This is a case where an attorney was on the case for 16 months. Defense witnesses were not interviewed. The defendant, after trial, complained that defense witnesses were not called. The prosecution case established that the defendant was drunk. The prosecutor essentially conceded it. The defense attorney did nothing to cross-examine the prosecution witnesses with regard to the effects of intoxication on the client. At the end of the case, the jury sends one note, and their one note refers to premeditation, and they essentially say, can a single act constitute premeditation? The defense attorney submits a jury instruction on intoxication, and that instruction would go to the mental state of the offense with regard to premeditation. The instruction is refused, and the defendant gets convicted of murder and is now doing life plus 10. And I don't understand how the defense attorney did not pursue and establish the defense of intoxication that he obviously relied on when he submitted a jury instruction for it. Numerous witnesses were available that would have testified that essentially this guy was a falling down drunk that couldn't talk, couldn't walk, and ultimately passed out. How much different was the additional evidence than what was presented? Because I understand there was evidence presented that he had been drinking all day and was... You're correct. There was evidence by the prosecution witnesses that he had been drinking for 10 hours, and that's all that was testified to. He had been drinking 10 hours. There was a statement by the defendant that came in, and in that statement they said that he had been drinking 12 hours. That is the sum and substance of the testimony on intoxication. Under California law, you must establish under the cases... People versus Ramirez is the one that I like to cite the best, and that's in the brief, but it's at 50 Cal 3rd, 1158, and 1179. The court says that jurors generally are aware of intoxication, but they say that they don't know how intoxication applies to a particular case without a jury instruction, and that's on page 1181. But more importantly, California law requires you to relate the effect of intoxication on a particular person to either his actions or his mental state, and again, that's people versus Ramirez, and that's at page 1181 of the opinion. Here there was no testimony regarding the relation of being drunk to how being drunk affected this particular defendant. Had there been... The judge refused the instruction that was requested for exactly that reason, that there was no showing at this trial how this intoxication affected the mental state of the defendant, and there was an incredible amount of evidence, as established by the declarations that were wouldn't have established the same thing. I assume, and I understand that's sometimes risky assuming, I assume that the attorney trying the case did not understand that California law required you to show that intoxication or that a continued amount of drinking had some kind of an effect on the person before you can obtain an intoxication jury instruction. Would that have been inconsistent with the defense he did mount? No. As a matter of fact, number one, there really wasn't a defense mounted. The defense mounted was, I don't know what these prosecution witnesses are going to say. They've said several different things. We'll wait and see what they have to say. The problem with that defense is under California law, what they had previously said comes in for the truth of the matter asserted if it's introduced as either a prior statement or a prior consistent statement, and there was no way that what the witnesses had prior testified to wasn't coming into evidence. In that case, they were talking about the firearm being pointed at them. The question is, if he was pointing the firearm at him, did he know what he was doing? Did the witnesses, did they recant, or one of the witnesses recant? Both of the witnesses recanted at some point in time. However, they were both under oath admitting that they had previously made statements as to what the trial testimony was. Why wouldn't he want to, is there something wrong with his pursuing a defense that the witnesses were? I'm sorry, there's nothing wrong with this. Do you want to go ahead and answer whatever question you think I'm going to ask? I apologize. You're right. Was there anything wrong with his pursuing the defense strategy that he did, assuming it's a strategy, which we have to do, which is that he would point out the conflicts in their testimony and impeach their credibility that way? I think that a person could ask those questions, but I think that the choice between intoxication and those questions... You cited his opening statement, I gather. I cited the opening statement of the prosecutor. What did he do during the trial? I thought he did, in fact, establish that they had changed their testimony. There is no question that it was established at trial that there had been a change in testimony. There is no question. By the defense? The defense established it? That's correct. All right. There's no question that that happened. Unfortunately, the changed testimony wasn't going to help in this situation because it was obvious that these were not friendly witnesses to the prosecution. The fact that everybody had been drinking and was drunk was established by the prosecution and by the prosecution witnesses. Once the prosecution witnesses themselves established that everybody was drinking and was drunk, it is inconceivable to me that you wouldn't also ask the question, oh, by the way, your conclusion was he was drunk. Why do you say he was drunk and establish in the record that he couldn't talk, that he couldn't walk, that you couldn't understand what he had to say? Didn't he walk from his one wife to the other wife's house? Actually, I don't think that the record is clear whether he walked or not, but it is clear that he got from one place to the other, and it's also clear from the ultimate, what ultimately happened, that he passed out and had to be undressed shortly after this incident was over. And did he, how did he come in possession of the gun? The gun, I believe the evidence is that the gun was in the room that he was at with his wife, somewhere in the room. There's no testimony as to where. Did he leave it at one place and get to the other place, and he had time to pick up and load a rifle? No, the gun was in the second place where the altercation occurred, and he picked up the rifle at that time. Did he have to load it, or is there any information about that? There is evidence, depending on which version you believe, that he loaded the rifle. And you say he didn't contact any of these five witnesses. That's not in the record, is it? That is in the record. It's in the affidavits, or the declarations that are submitted by the witnesses. I thought three. Well, there... Three said... Yes, three of them specifically say they were not contacted, but it's important to... What's the... Counsel, you know, you're going to run all over me. I'm sorry. I'm going to have to decide the case. Yeah, I agree. At least I have one third vote on it. Okay, so just so I can finish my thought. Two of the witnesses did not make that affirmative statement. I believe that's accurate, yes. All right. So are we to infer from their silence that they weren't contacted, or infer that they may well have been contacted? I think that the more rational inference is that they weren't contacted, and the reason for that is because after the trial was over, the defendant had a second Marsden hearing, and at that time, he complained to the court that his witnesses had not been called, and that's at... Well, that's his statement. That's correct. Well, that's not... That's not the lawyer's statement. That's correct. Okay, so... All right. Well, we'll have to draw our own inferences. I just wanted to ask you... Assuming they don't make that statement. I just wanted to ask you procedurally, were these additional declarations filed in the state court, or were they produced only for the federal... No. State court? No. No. They were in the record for the state court. Okay. Thanks. Thank you, counsel. And I apologize, Your Honor. That's all right. I do the same thing, except I'm up here, and you're down there. Morning, Your Honors. Bob Snyder, Deputy Attorney General for Warden Almaguerre. May it please the court, this is a case about choices from defense counsel's point of view. Defense counsel didn't have this case originally. He got it after the prelim, and the defense he inherited was three witnesses saying he didn't do the crime, he never attempted this murder, and defendant giving an interview to the police saying, I didn't do it. That's the case defense counsel inherited. The defense that counsel wants to run now is, well, he did it, but he didn't mean it. The intent wasn't there. And I would submit that Judge Fischer is correct when he says that these are inconsistent defenses. Well, I asked the question. I didn't say. I stand corrected, Your Honor. But the main victim, Prado, testified in the prelim that defendant not only didn't point the rifle at me or my friend, he didn't even punch me. Lopez, the victim's friend, said, well, he did punch her and he held the rifle, but he didn't point it at us. And Paramo, the other eyewitness, defendant's brother-in-law, said, well, he held the gun toward each victim, but he wasn't aiming it. This was locked in. This was the prelim testimony. Why is that inconsistent to say he was also drunk? I think it is, Your Honor, because the only relevance of voluntary intoxication under California law is whether the defendant intended the act. And without the act, that defense doesn't make very much sense. I would submit that it is. Why would he ask for an intoxication instruction? The short answer, Your Honor, is I don't know. The record doesn't tell us that. I did note that he also asked for instruction on heat of passion and provocation. And you know, I could speculate about why he would want to throw the kitchen sink in for perhaps to obscure or confuse the jury, but the short answer is I don't know. But if you're throwing in the kitchen sink, you've got to throw in some faucets and you can't just ask for an instruction on a bare record. You know, the trouble with that is if the defense he's running is that my client didn't do it and that the witnesses are lying to the extent they changed their story, and that is the closing argument the defense counsel made, it really diminishes the defense in saying, well, he didn't do it, but if he did it, he didn't mean to. Why wouldn't he argue not only that he didn't do it, but it's impossible, you know, on the evidence I put in about how drunk he was, he couldn't have done it. Well, one reason that that was a difficult defense to go with is that he showed a lot of cognition in the manner in which he approached the crime. He did load the rifle. He found it, first of all, in the guest house, loaded it, held it. Everybody agrees that he held the rifle, and as the court of appeals said, he had the presence of mind to leave when he sensed that he was in trouble and the police were coming. So there, you know, we can say theoretically that he didn't intend the crime, but there's a lot of evidence that he did know what he was doing, and to the extent that it's insufficient on voluntary intoxication, it wasn't as good a defense to run. You know, Ray Sorsains tells a story about the defendant who's charged with letting his dog attack a victim, and the defense is, my dog doesn't bite, but in the alternative, my dog was tied up that day, and by the way, he didn't really get bitten, and fourth, I don't have a dog, and the trouble with these inconsistent defenses is that it loses the credibility when you say, I didn't do it, but if I did, I didn't do it. You don't have to argue it that way. All you have to do is put in the evidence and let the jury, properly instructed, decide whether or not it applies or not. Well, certainly, I mean, you can, you know, there are some times where you can argue inconsistent defenses, and it's perfectly logical. This one, I just don't see much of an inconsistency to say, but in the evidence that he was stumbling around. I wouldn't attempt to. Well, why would you, again, maybe it's a kitchen sink approach, but why would you ask for a voluntary intoxication instruction when you didn't put on any evidence? Well, you know, your honor, if I may, that brings up another point. The question the court certified was whether trial counsel rendered ineffective assistance by failing to adequately research and prepare the voluntary intoxication defense. The appellant's answer to that question is, here are five witnesses who say he was drunk. The answer I would submit that would be better from a burden of proof standpoint would be, what does counsel say about why he didn't prepare a voluntary intoxication defense? What does petitioner say about the missing witnesses? Both of those declarations are absent, and I would submit that that's a fatal problem because how was counsel supposed to know without information from petitioner that there was a previous party at which defendant was allegedly drinking? Or to put the question a little bit tartly, is it ineffective not to ask your client whether he has a second family and whether he came from a party where his other wife was drinking? As a footnote, I might add that this is also not very palatable to a jury. If the defense of voluntary intoxication necessitates disclosure that, well, yes, I was at my daughter's communion when the incident happened, but earlier I was at the home of my other wife and my other children. In the real world, this is a much more difficult point for the jury to accept. As the court points out, three of the declarants did say that they were never contacted by counsel. I don't think we can necessarily infer that the other two were or weren't, but equally I don't think we can infer that trial counsel didn't try to reach those witnesses. All the witnesses say is that they weren't contacted. We discussed voluntary intoxication, and as counsel acknowledges, it's admissible solely on the issues of premeditation and specific intent. The declarations per se don't serve to negate that intent, and the reason is none of them has the defendant at the relevant time, which is midnight. Three of the declarations take the defendant up to about 5 o'clock. Another one talks about sometime after midnight the defendant was intoxicated, but the defendant told me, the witness says, that he got hit on the head. That of course could also account for his behavior, and so if we want to argue that there was sufficient intoxication to negate specific intent, the declarations don't really do that, and when you combine that with the absence of a declaration from either petitioner or his attorney to flesh out the strategy, I think the burden, which is petitioners, simply isn't met here. Strickland and its line of cases talk about many different ways to defend a case. Let me ask you this. If they're right and you're wrong, and if the evidence of intoxication would have negated the requisite intent, what would he be guilty of? Well, the Court of Appeals said it couldn't be attempted in voluntary manslaughter. I think the jury's choice at that point would have been an acquittal, that there wouldn't have been sufficient evidence to convict, because the required intent wasn't there. But I think on these facts, John... That doesn't seem plausible. I think that's correct. An outright acquittal? No, I think that's correct. Particularly, and I know the severance isn't before us, but the incident three months later, in which the defendant appeared to be coked up and highly intoxicated, didn't help the jury vis-a-vis the initial crime, either. I'm not sure I understand. Your answer to my question is what he would be... I think, had the jury been able to find voluntary intoxication, that there would not have been a conviction with respect to that. There would be no lesser included? I imagine there could be a lesser included for a firearm assault, and in fact, that was charged, I think, at count three, if I recall. But the fundamental problem is, for habeas purposes, the state court's ruling has to be completely lacking in justification. And if it was, it would seem to me that that would have to be established by evidence from Petitioner and or his counsel about what the defense was, and that's simply missing here. It's fine to say, to present other witnesses who say, well, not only was he drunk, he was really drunk, but the district court called that cumulative. And I think the point there is that voluntary intoxication wasn't disputed. The language of the district court was, there wasn't evidence that the intoxication affected his cognitive ability to form specific intent. So my time is up, if the court wishes I could conclude. Thank you very much. Thank you. Thanks. Thank you very much. We'll give you two minutes. Thank you. Excerpt of record, page 34, declaration by Nativa, Nativa Dodd Corona, she saw Mr. Corona at 9 or 10 o'clock and he was in the same condition that he was at 4 or 5 o'clock. She had seen him at both times. There's another declaration that shortly after midnight she saw him, another person saw him and he was in the same condition. With regard to the no declarations from trial counsel, that's explained in the reply brief. The California case on what you must do for filing a habeas is People v. Duvall at 9 Cal 4th. And clearly the pleadings in California were adequate to raise the issue in California. So that issue is not before the court. The lesser included offense that could have been convicted up here with an instruction on intoxication was guilty of attempted murder as opposed to attempted premeditated murder. Whether or not there are other offenses he could have been accused of, it's clear that he could have been convicted of attempted murder based upon the instruction that wasn't given. What would the sentence range be in that case, attempted murder? The range for attempted murder, I believe, is 5, 7, and 9. If we were to agree with you, what would the remedy be here, grant habeas relief and what enter judgment, send it back to the state court to enter judgment for attempted murder? Actually, I believe that the proper thing would be to give the, if the court considered that, is to give them the opportunity to either retry the case or say that enter a judgment for attempted murder. The problem about why you don't want to bring up bad things about the defendant, counsel touched on this. This case, what happened three months later was terrible and it was on videotape. There was no question that the defendant looked horrible to the jury and there's no question that the defendant was going to be convicted on the offenses three months later. To say that calling other family members would put him in a bad light, that's pretty hard to do because he was in about as bad a light as he could be based upon the other offenses that was in front of the jury. If there are any questions, I would like to try to answer them. I think we're, I think we have the case in hand. Thank you for your argument. Thank you. The case will be submitted. I apologize. Submitted for decision. The next case on the oral argument calendar is United States v. Quartet.
judges: Thomas, Silverman, Fisher